UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| NAKIAH ELLISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV414-054 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| *Acting Commissioner of Social Security,* | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Nakiah Monique Ellison, a 40-year-old woman suffering from multiple sclerosis ("MS") and degenerative disc disease of the cervical spine, applied for a period of disability, disability insurance benefits, and supplemental security income in April 2010, alleging an onset date of March 31, 2010. (Tr. 16, 67.) Her application was denied both initially and on reconsideration. (Tr. 16.) An Administrative Law Judge ("ALJ") conducted a hearing and denied benefits. (Tr. 16-23; 30-66 (hearing transcript).) The Appeals Council denied her request for review, making

the ALJ's decision the final decision of the Commissioner. (Tr. 5-7.) She then filed a complaint for judicial review in this Court, contending that the ALJ erred in reaching his determination. (Doc. 1.) For the following reasons, the Commissioner's decision should be affirmed.

I. **MEDICAL HISTORY**

A December 9, 2008 MRI at Candler Hospital revealed that Ellison, who had complained of chronic headaches for a year, was suspicious for MS. (Tr. 296, 309.) She was referred to Dr. Frank Lafranchise, M.D., a neurologist, for evaluation and treatment. (Tr. 296 (MRI results with a note asking that they be faxed to Lafranchise and asking he could "fit her in sooner than the 18th"), 269 (Lafranchise's 12/18/2008 visit notes).) When plaintiff met with Dr. Lafranchise, she complained of a partial loss of sensation (hemisensory deficits) on the right side of her body. (*Id.*) She also stated that she suffered from daily headaches, which frequently persisted for 12 hours. (*Id.*)

Dr. Lafranchise ordered additional testing, which confirmed MS. (Tr. 270, 271.) Her headaches, however, appeared to be unrelated tension headaches. (Tr. 272.) He began treating her with weekly injections of Avonex (a type of interferon), and he recommended that she

switch from Goody's powders to some sort of non-steroidal anti-inflammatory pain medication for her headaches. (*Id.*)

At a follow-up visit in July 2010, Dr. Lafranchise noted that plaintiff had no new symptoms, but she stated that she was unable to continue working as a housekeeper "because of her neurologic deficits." (Tr. 371.) Dr. Lafranchise noted that he did "not think she will be able to return to work and she should be considered completely disabled." (*Id.*) She still suffered from right hemisensory deficits and had leg clumsiness and gain instability. (Tr. 372.) An MRI in 2011 showed that little had changed. Her lesion profusion remained mild. (Tr. 422.) Several follow-up appointments consistently showed that her MS-related symptoms had not changed or progressed, though the doctor changed his headache diagnosis from tension headaches to migraines. (Tr. 420, 419.) He prescribed her Maxalt for the migraines, and it seemed to help. (Tr. 409, 417.)

A 2012 MRI showed the first worsening of the disease. The radiologist noted a demyelinating lesion in plaintiff's cervical spine that had not been reported in prior examinations. (Tr. 415.) Nevertheless, the lesions in her brain remained unchanged. (Tr. 413.) Her last follow-

up with Lafranchise states that she has had reported no further exacerbating symptoms and that the new lesion was "nothing acute." (Tr. 408.) Plaintiff was kept on Avonex, Maxalt, and was prescribed Lyrica. (*Id.*)

## II. STANDARD OF REVIEW

Affirmance of the Commissioner's decision is mandatory if her conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. This Court cannot

4

substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether she has met the burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that she has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's impairment meets or equals a listed impairment, she is automatically found disabled. *Id.* If not, she must advance to step four, which requires her to prove an inability to perform past relevant work. *Id.* At that step the ALJ assesses "the claimant's residual functional capacity ('RFC')" and "ability to return to [his] past relevant work." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing

5

20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). If she cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Moore*, 478 F. App'x at 624.

### III. ANALYSIS

In his June 19, 2012 decision, the ALJ evaluated all of the medical evidence of record, including Dr. Lafranchise's notes and assessment, a consultative examination performed by Dr. Harriett Steinert (tr. 378-84), a physical capacities evaluation by another treating physician, Dr. Minkailu Sesay (tr. 375-77), and a state agency consultant's residual functional capacity evaluation. (Tr. 385-92.) The ALJ found that Ellison had two step-two severe impairments: multiple sclerosis and degenerative disc disease of the cervical spine. (Tr. 18.) Neither met a listing at step three. (*Id.*) At step four, the ALJ discounted the treating physician statements and found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant cannot climb ladders, ropes, or scaffolds. Claimant cannot balance or crawl. Claimant can sit, stand, walk, push/pull with the left upper extremity and operate foot controls with her left lower extremity for at least six of eight hours each workday. Claimant

6

can lift/carry 20 pounds occasionally (up to one-third of an eight hour workday) and 10 pounds frequently (up to two-thirds of an eight hour workday). Claimant [can] only use her right lower extremity for operating foot controls for up to one-third of an eight hour workday. Claimant can perform fine fingered manipulative activities with her right hand for no more than one-third of an eight hour workday although she can grasp and handle items with her right hand for up to two-thirds of an eight hour workday. She can individually climb ramps/stairs, stoop, kneel, and crouch for no more than one-third of an eight hour workday. Claimant should avoid concentrated exposure to extreme heat/cold, humidity, and hazardous work environments.

(Tr. 19.) After consulting with a vocational expert ("VE"), the ALJ found that although Ellison is unable to perform any past work, she could return to work as a "furniture rental consultant," a "sales attendant," and a "ticket taker." (Tr. 23.) She was thus not disabled at step five.

Ellison claims the ALJ erred by failing to evaluate properly the opinions of her treating physicians and by relying upon VE testimony elicited in response to an incomplete hypothetical question. (Doc. 16 at 7, 10.) The Court disagrees.

### A. Treating Sources

An ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997);

7

*Edwards v. Sullivan*, 937 F.2d at 583; 20 C.F.R. § 404.1527(d); *Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012).

> "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas*, 2012 WL 750547 at * 6.

The opinions of examining physicians fall below a well-supported treating source opinion. *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). And non-examining physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and determine their weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f).

Here, Ellison relies on two treating physician opinions. The first is Dr. Lafranchise's treatment note (entered *after* Ellison applied for social security benefits), which stated that he did "not think she will be able to return to work and she should be considered completely disabled." (Tr.

8

371.) But Dr. Lafranchise offered no evidential support for the statement whatsoever. (*Id.*) And his treatment notes almost universally show that her disease was stable. (Tr. 372 ("completely disabled"); tr. 408, 419, 420, 421.)

The second treating physician, Minkailu Sesay, specializes in family medicine and is listed as Ellison's primary care provider. (Tr. 349, 419.) There are few actual treatment notes from Sesay. For the most part, the record mentions Dr. Sesay obliquely. Generally, the doctor's name appears with instructions to forward Ellison's treatment notes and medical test results. Despite this lack of evidence showing Sesay's involvement in Ellison's healthcare, the doctor's disability assessment is extreme. He notes that Ellison is frequently weak and fatigued, her hands and legs go numb, and she can't stand for more than 10 minutes or sit for more than 20 minutes at a time. (Tr. 375-76.) Based upon her MS diagnosis, the doctor states that Ellison can never climb stairs, ramps, ladders, or scaffolding; she can never balance, stoop, kneel, crawl, reach, or handle items; and she can only occasionally feel or finger items. (Tr. 376.) Aside from repeatedly invoking MS, the doctor states that

9

supporting evidence should come from Dr. Lafranchise's treatment notes. (Tr. 377.)

Ellison's own testimony heavily discredited her treating physician's reports. As the ALJ notes in his decision, she testified that she could sit for 3 to 4 hours at a time until she "gets really numb" and she can then stand for 20 to 30 minutes. (Tr. 20 (ALJ's decision); tr. 50 (hearing tr.).) She stated that she only occasionally had difficulties walking or required use of a cane. (Tr. 51.) Admittedly, she claimed that she was often in pain and suffered from frequent headaches. But when asked whether she could perform a simple "sit-down job" rather than working as a housekeeper, her response was "[w]ell, I never had a sit-down job . . . I'm not sure." (Tr. 52.) Furthermore, Dr. Sesay's implied finding that Ellison is perpetually suffering from MS-related "flares" at best exaggerated the situation, since Ellison reported that they occur "[m]aybe once every two weeks." (Tr. 53.)

The non-treating medical sources all found that plaintiff's physical deficiencies were exaggerated. Dr. Harriett Steinert, an examining physician, conducted a series of tests which established that Ellison maintained a full range of motion and had normal grip, pinch, strength,

gait, and coordination. (Tr. 379-82.) Dr. Steinert described Ellison as "pleasant and cooperative" and noted that she was in "no acute distress" at the time of the examination. (Tr. 383.) The only abnormal findings were that Ellison was able to walk on her toes but not her heels, and that she suffers from numbness and pain in her right extremities. (Tr. at 384.)

A non-examining state evaluator, Dr. Arthur Schiff, M.D., examined plaintiff's medical records and noted that she had very few functional limitations. (Tr. 385-92.) He found that she could lift 50 pounds occasionally, 25 pounds frequently, and that she could both sit and stand for 6 hours of any 8 hour workday. (Tr. 386.) He found very little in the way of other limitations. (Tr. 386-91.) He also noted that her activities of daily living were markedly inconsistent from her alleged limitations. (Tr. 391.)

The ALJ found that both treating physicians' opinions of "total disability" were not supported by objective criteria or by Ellison's own statements at the hearing. (Tr. 20-21.) Given the paucity of objective evidence suggesting that plaintiff is totally disabled, the Court concludes

11

that the ALJ applied the proper legal standard and thus had "good cause" for discounting their opinions.

### B. Incomplete Hypothetical Question

Finally, Ellison contends that the ALJ proposed an incomplete hypothetical question to the vocational expert at the administrative hearing. (Doc. 16 at 10.) He reasons that the ALJ's errors in determining Ellison's RFC and in evaluating the opinions of her treating physicians rendered the hypothetical incomplete. (*Id.* at 11.) This is simply a tag-along argument that has no merit after the Court's finding that the ALJ's RFC determination and evidential evaluation were supported by substantial evidence of record.

## IV. CONCLUSION

The ALJ's determination that claimant could return to work is supported by substantial evidence of record. Consequently, the Commissioner's decision denying benefits should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this 27th day of March, 2015.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA